UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

VICTOR ANDUJAR, individually and on      Case No. 23-cv-08764
behalf of all others similarly situated,


                     Plaintiff,               **COLLECTIVE AND CLASS**
                                        **ACTION COMPLAINT**
            v.


SKYC MANAGEMENT LLC, 674 HOLDING LTD.,
SHIMON GREISMAN and GARY GARTENBERG,


                 Defendants.
---------------------------------------------------------------X

       Plaintiff Victor Andujar ("Plaintiff" or "Representative Plaintiff"), individually and

on behalf of all others similarly situated, upon personal knowledge as to himself and upon

information and belief as to other matters, by his attorneys, Rapaport Law Firm, PLLC, as

and for his Complaint against SKYC Management LLC ("SKYC Management"), 674

Holding LTD. ("674 Holding"), Shimon Greisman ("Greisman") and Gary Gartenberg

("Gartenberg") (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

       1.     This class and collective action is brought pursuant to the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 207(a)(1), 260, and 216(b), New York Labor Law

("NYLL") § 652(1), 12 New York Codes, Rules and Regulations ("NYCRR"), Parts 141 and

142 and NYLL Article 6 § 190 *et seq.*, to recover unpaid minimum and overtime minimum

wages, reimbursement for unlawful deductions from wages, and other wages owed to

Plaintiff and similarly situated superintendents, porters and other maintenance workers who

have worked at the approximately thirty-five (35) apartment buildings owned, controlled

and/or operated by Defendants in New York City (the "Greisman Buildings") during the

applicable limitations periods.

2.      The majority of the building maintenance workers employed at the Greisman Buildings are immigrant workers who speak limited English, and they are unlikely to be familiar with the American legal system, let alone their rights under federal and state wage and hour laws.

3.      Furthermore, these low-wage workers undoubtedly grasp that they are replaceable. If they are residential superintendents, the prospect of losing their jobs virtually guarantees that they and their families will simultaneously lose their superintendent's apartment where they reside.

4.      When Defendants previously faced a wage and hour lawsuit by building superintendents and porters, Defendants responded with intimidation and retribution, which led to a preliminary injunction restricting Defendants' communications with their employees regarding that lawsuit. Alejandro Armas, et al., against SKYC Management LLC, et al,,14 Civ.6360 (PGG)(HBP) (S.D.N.Y.) (Order, Dkt. No. 40, May 5, 2015).

5.      In light of Defendants' prior conduct, Defendants' workers would likely be particularly reluctant to file independent lawsuits to enforce their rights under wage and hour laws, even though Defendants pervasively and willfully disregard wage and hour laws.

6.      Therefore, this proceeding, which is brought as a putative collective action under the FLSA and a putative R. 23 class action for violations of the NYLL, is probably the only practical opportunity for Defendants' workers to obtain compensation for the unpaid wages they are owed.

**The Greisman Enterprise:**

7.      At all relevant times, Defendants were and still are a centrally managed real estate enterprise (the "Greisman Enterprise") that owns, controls, and manages apartment buildings in Upper Manhattan and the Bronx.

8.    Upon information and belief, Defendants have employed 40 or more maintenance workers (superintendents, porters and handymen) during the applicable limitations periods.

9.    Upon information and belief, during the time period relevant to the Plaintiff's and the putative Class and Collective Members' causes of action, the Greisman Enterprise was ultimately controlled by individual defendant Greisman, who was their joint employer.

10.    Greisman owned and controlled the Greisman Buildings through various title-holding entities, each of which nominally held title to one or more of the Greisman Buildings on Greisman's behalf.

11.    Greisman was the principal, managing member, manager and/or senior officer of each title-holding entity.

12.    At all relevant times, the Greisman Enterprise had a principal place of business at 1419 60th Street, Brooklyn, New York, from which it owned, operated and managed the Greisman Buildings under the same policies regarding the payment of wages to building maintenance employees.

13.    At all relevant times, the Greisman Enterprise also maintained a management office located in the basement of the Greisman Enterprise's apartment building located at 321 Edgecombe Avenue, New York, New York, which is run by Gartenberg, who directly supervises superintendents on a day-to-day basis.

14.    From their main office in Brooklyn and their management office at 321 Edgecombe Avenue, Defendants determined the wages of all superintendents; handled bookkeeping for all of the Greisman Buildings; accepted and issued communications with tenants and building employees; and generally exercised centralized control over the Greisman Buildings.

15.    In their Building Registration filings for the Greisman Buildings with the New York City Department of Preservation and Development ("HPD"), Defendants identify 1419 60th Street as the address of Greisman, SKYC Management and the title holding entities.

16.    For decades, the Greisman Buildings have shared a single entity as their managing agent.  Today, that entity goes by the name of "SKYC Management."

17.    The Greisman Enterprise issues communications and correspondence relating to all Greisman Buildings utilizing the same letterhead, post office box, and telephone number.  Defendants have used the same and/or extremely similar letterhead, with identical graphics, for the Greisman Buildings since at least the early 1990's.

18.    Upon information and belief, the Greisman Enterprise has applied common employment practices, policies and procedures to superintendents, porters and maintenance workers of the Greisman Buildings, including, *inter alia*, the Greisman Enterprise's practice of willfully refusing to compensate these employees for all hours worked beyond the first forty (40) hours of work per work week and imposing policies and practices that led to unlawful deductions from superintendents' wages.

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1337 because this case arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* The Court has supplemental jurisdiction over the New York state law claims pursuant to 28 U.S.C. §1367 because these claims are so related to and closely intertwined with the FLSA claims that they form part of the same case or controversy.

20.    Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C. §1391. Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process.

21.    This Court has personal jurisdiction over the Defendants, pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Plaintiff within the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

22.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202.

## THE PARTIES

**Plaintiff**

23.    Plaintiff is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

24.    Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his written consent form is attached hereto as Exhibit A, which is incorporated herein by reference.

25.    Plaintiff worked as the Superintendent of Defendants' approximately forty-three (43) unit apartment building at 674 West 161st Street, New York, New York ("674 W. 161 St."), from in or about October 2004 through in or about August 1, 2022.

26.    Plaintiff is a covered employee within the meaning of the FLSA and NYLL.

**Defendants**

**Corporate Defendants.**

27.    Upon information and belief, and at all times herein relevant, SKYC Management is a New York corporation with a principal executive office at 1419 60th Street, Brooklyn, New York.

28.    Together with the other defendants, SKYC Management has controlled and operated the Greisman Buildings during the relevant periods.

29.    In their filings with HPD, Defendants designated SKYC Management as the management company/managing agent for the Greisman Buildings, each of which is nominally titled in the name of a limited liability company.  All of these entities (to wit, SKYC Management and the title-holding entities), together with the individual Defendants, function as a  single business enterprise.

30.    Upon information and belief, 674 Holding is a corporation duly organized under the laws of the State of New York, with a principal address for the conduct of business at 1419 60th Street, Brooklyn, New York 11219.

31.    674 Holding is owned and controlled by Greisman for the purpose of nominally holding title to 674 W. 161 St., where Plaintiff worked as superintendent.

32.    Upon information and belief, 674 Holding's operations, management, assets, personnel policies, wage policies, and ownership are intertwined with the other defendants, as well as other single-purpose title-holding entities formed by Defendants to nominally hold title to the Greisman Buildings on behalf of Greisman.

**Individual Defendants.**

*Greisman*

33.    Upon information and belief, Greisman is a resident of the State of New York.

34.    Upon information and belief, Greisman holds the title of "Chief Executive Officer" and/or serves as the most senior corporate officer and/or managing member of all the entities that comprise the Greisman Enterprise, including, but not limited to: SKYC Management; 161 Holding Ltd.; Post LLC; Abby Associates; 2275 Holding Ltd; 22 Holding Corp.; Chama Holding Corp.; 346 Holding Corp.; Steb Realty Corp.; 674 Holding Ltd; 666 Holding LLC; 116 West Corp.; DBPB Holding Corp.; Helbor Realty Corp.; Bragreis Realty

Corp.; S&S Group Holdings, LLC; Bronx River Assoc. LLC; Walton Avenue Realty Assoc

LLC; Townsend Avenue Realty LLC; 1820 Holding Ltd.; Hennessy Realty LLC; Gleason

LLC; 2246 Holding Corp.; 2188 Realty Ltd; 2195 Grand Concourse Realty LLC; 2472

Webster Realty LLC; 2281-85 Realty LLC; 2395-97 Realty LLC; University Realty

Holdings LLC; 2522 Realty LLC; and Heights Realty Co. LLC.

35.    For example, the New York State Department of State Entity database

identifies Greisman as the Chief Executive Officer of 674 Holding.

36.    Upon information and belief, Greisman has managerial and operational

control over the Greisman Enterprise's financial affairs and personnel policies, including, but

not limited to, matters and policies pertaining to compensation of the Greisman Enterprise's

employees and overtime policies.

*Gartenberg*

37.    Gartenberg is an individual who, upon information and belief, resides in

Monsey, New York.

38.    Gartenberg exercised control over the wage policies and personnel practices

of the Greisman Enterprise's superintendents and other maintenance workers.

39.    Gartenberg managed and supervised Plaintiff.

40.    Gartenberg  was directly responsible for, and he carried out, violations of

wage laws committed by Defendants, including, but not limited to, Defendants' policy of

requiring Superintendents to pay, from the their personal funds, work-related expenses that

benefitted the Defendants.  By way of example, Gartenberg directed superintendents to pay

penalties issued by New York City governmental agencies relating to the buildings.

41.    On a day-to-day basis, Gartenberg instructed Plaintiff and putative

class/collective members regarding work duties and projects, and he determined and/or

approved the amount of payments issued to Plaintiff and putative class/collective members for their work.

42.    Each defendant possessed substantial control over Plaintiff's and other similarly situated employees' working conditions, and over the policies and practices with respect to wages, duties, and work schedules.

43.    Both Greisman and Gartenberg exercise sufficient control of the Greisman Enterprise to be considered Plaintiff's employers under the FLSA and NYLL.

44.    Additionally, upon information and belief, Greisman is liable for the wages of Plaintiff and those similarly situated under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

### The Proposed FLSA Collective.

45.    Pursuant to 29 U.S.C. 207 & 216(b), Plaintiff brings his FLSA overtime claim, the First Cause of Action, on behalf of himself and  the FLSA Collective, which consists of:

> All persons who work or have worked as superintendents at the Greisman Buildings commencing three years prior to the commencement of this action to the date of final judgment in this matter (the "Collective Action Members").

46.    A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were not exempt from the FLSA's overtime provisions, and they were subjected to Defendants' practice of not paying legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

47.    Plaintiff and the approximately 40-plus Collective Action Members have substantially similar job duties (to wit, performing building maintenance work at apartment

buildings in Upper Manhattan and the Bronx) and are paid pursuant to similar, if not the same, payment structure.

48.    At all relevant times, Defendants are aware and have been aware of the requirements to pay Plaintiff and the Collective Action Members at amounts equal to one and one-half times their regular rates of pay for all hours worked each workweek above forty hours, yet they purposely and willfully chose not to do so.

49.    Plaintiff and all similarly situated employees who elect to participate in this action seek unpaid compensation, unpaid overtime, an equal amount of liquidated damages, prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

50.    The FLSA Collective Members are readily ascertainable, such information being in the possession and control of Defendants.

51.    Plaintiff's consent to sue under the FLSA is annexed hereto as Exhibit A.

**The Proposed R. 23 Class.**

52.    Plaintiff brings the Second through Fifth Causes of Action, the NYLL Claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons (the "NYLL Class") consisting of:

> All persons who work or have worked as manual workers, including but not limited to superintendents, porters and handymen, at Greisman Buildings commencing six years prior to the commencement of this action to the date of final judgment in this matter.

53.    The members of the NYLL Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

54.    There are more than forty members of the NYLL Class.

55.    NYLL Class Members are readily ascertainable.  The number, identity and addresses of putative class members are ascertainable from Defendants' records.  The

positions held, and nature and extent of certain unlawful deductions from wages are also determinable from Defendants' records. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

56.    The Defendants, their officers, and directors are excluded from the New York Class, as well as all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

57.    Plaintiff's claims are typical of those claims that could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class.

58.    Plaintiff and the New York Class have been subjected to common wage and hour violations in that they were deprived of overtime pay and minimum wages, subjected to unlawful deductions from wages due to Defendants' common policies, practices, and patterns of conduct, and were not issued accurate wage statements.

59.    Defendants' corporate-wide policies and practices affected everyone in the NYLL Class similarly, and Defendants profited from the same type of unfair and/or wrongful acts as to each member of the NYLL Class.

60.    Plaintiff is able to fairly and adequately protect the interests of the NYLL Class and has no interests antagonistic to the NYLL Class.

61.    Plaintiff is represented by attorneys who are experienced and competent in both class and collective action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases, particularly in cases that, as here, involve claims of superintendents and building maintenance workers.

62.    A class action is superior to other available methods of fair adjudication of NYLL Claims, particularly because many of the putative members of the NYLL Class do not speak English, are unlikely to be familiar with their rights under the NYLL, may be fearful of

suffering retaliation if they commence a lawsuit, and may not have the financial resources to vigorously pursue a lawsuit.

63.    Common questions of law and fact exist as to the NYLL Class that predominate over any questions only affecting Plaintiff and/or each member of the NYLL Class individually and include, but are not limited to, the following:

(a)    Whether Defendants paid the NYLL Class minimum wages to which members of the NYLL Class were entitled under the NYLL;

(b)    Whether Defendants paid the NYLL Class premium overtime compensation for all hours worked above forty in a workweek;

(c)    Whether Defendants required the NYLL Class to pay for their tools used for the benefit of the Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry. 12 N.Y.C.R.R. § 141-1.9;

(d)    Whether Defendants required the NYLL Class to pay for temporary replacement workers when they took time off for vacations;

(e)    Whether Defendants required the NYLL Class to pay penalties issued by New York City agencies and/or to pay for other building-related costs; and

(f)    Whether Defendants furnished Plaintiff and the NYLL Class with accurate wage statements as required by the NYLL.

## COMMON FACTUAL ALLEGATIONS

### Interstate Commerce

64.    At all relevant times hereto, Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).  Defendants employed Plaintiff as a superintendent. This employment position engaged Plaintiff in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).

65.    At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

66.     Among other forms of interstate activities, Defendants operate the Greisman Buildings through the extensive use and handling of goods and materials, such as cleaning supplies, paint, tools, and similar items, all of which travelled in interstate commerce, and Plaintiff personally used such materials in performing his daily job duties.

67.     In performing his routine job duties, Plaintiff handled and installed faucets, carbon monoxide detectors, window guards, and other items that, upon information and belief, had been moved in interstate commerce.

68.     Upon information and belief, Defendants operated the Greisman Buildings with extensive business dealings with mortgage companies, banks, insurance companies, vendors, and other service providers both within and outside the State of New York.

69.     At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA and all other statutes referred to in this Complaint.

70.     At all relevant times, Defendants employed Plaintiff within the meaning of the NYLL, §§ 2 and 651(5) and (6).

**Enterprise**

71.     Upon information and belief, at all relevant times, Defendants had gross revenues in excess of $500,000.00.

72.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay building maintenance employees by the same method, and share control over employees.

73.     Each Defendant possessed substantial control over the policies and practices over Plaintiff's working conditions and the working conditions of similarly situated superintendents, porters and handymen.

74.     Defendants jointly employed Plaintiff and are Plaintiff's employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

75.    In the alternative, Defendants constitute a single employer of Plaintiff and similarly situated superintendents, porters and handymen.

**Summary of Defendants' Unlawful Wage Practices**

76.    Upon information and belief, Defendants applied common employment practices, policies and procedures to superintendents and maintenance workers working at the Greisman Buildings, including, *inter alia*, willfully refusing to pay one and one-half their regular rates of pay for all hours worked beyond the first forty (40) hours of work per work, paying fixed weekly wages that fell below New York's applicable minimum wage rates, and unlawfully deducting sums from wages.

77.    In an effort to obfuscate their failure to pay overtime compensation, Defendants pressured workers to report only a portion of the hours they actually worked.

78.    Defendants require superintendents to remain on-call at their respective buildings from early morning through late at night, without making any arrangements for superintendents to report and/or be paid wages for their on-call time except on extremely limited occasions.

79.    Defendants' insistence that superintendents remain on-call ensured the superintendents' availability to perform snow removal, provide building access to emergency responders, address leaks, handle tenant requests, and perform other unanticipated tasks. However, regardless of the time of day or night and/or day of the week when such work was performed, superintendents were, with limited exceptions, paid fixed weekly sums, and they were not paid premium overtime compensation despite working substantially more than 40 hours per workweek in violation of the FLSA and NYLL.

80.    Furthermore, Defendants had a policy and practice of requiring Plaintiff and similarly-situated building maintenance workers to pay for tools used solely for the benefit of

Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry.  12 N.Y.C.R.R. § 141-1.9.

81.     Defendants had a common practice and policy of requiring superintendents to pay for temporary workers to fill in for them when they took time off for vacations.

Defendants also had a portfolio-wide practice (which was disseminated in writing to all superintendents) requiring superintendents to monitor the oil levels of the boilers at their respective buildings "365 days a year." Defendants further instructed all superintendents that any deviation from this requirement would result in the superintendents being required to pay any resulting costs, fines and penalties.

82.     The foregoing reflects the Defendants' widespread and years-long policy and practice of regularly requiring superintendents to pay, out-of-pocket and without reimbursement, an array of building-related costs, including fines and penalties issued by New York City agencies and costs for temporary workers who fill in for superintendents when they are on vacation.

83.     Defendants also had a common practice of issuing pay statements to workers that did not comply with the NYLL, including, among other unlawful omissions, failing to accurately set forth hours worked and/or identifying the manner in which employees' weekly pay was calculated.

84.     Defendants' have continued to engage in the foregoing wage and hour violations despite having been put on notice of  the illegality of their wage practices by virtue of prior lawsuits brought by Defendants' superintendents and porters in 2014.

85.     Instead of engaging in efforts to comply with the FLSA and NYLL, Defendants schemed to conceal their wage and hour violations by, among other tactics, pressuring workers to submit timesheets that understated the number of hours worked.

**Factual Allegations Relating to Plaintiff's Wage Claims**

86.    Andujar was the superintendent of 674 W. 161 St. from in or about October 2004 through in or about August 1, 2022.

87.    Andujar's routine responsibilities included, among other tasks, cleaning, mopping, minor repairs, plumbing, communicating with tenants, collecting rent, sweeping the sidewalk, handling recycling and garbage, cleaning the elevator hold, showing vacant apartments, painting, removing discarded items from newly-vacated apartments, repairing sinks and toilets, allowing access for emergency responders at all hours of the night and day, and addressing leaks twenty-four hours a day.

88.    Andujar was paid a fixed weekly salary, regardless of the number of hours he worked, as follows: (a) during the period October 5, 2017 through approximately April 27, 2018, $340.00 per week; and (b) during the period April 28, 2018 to approximately August 2022, $375.00 per week

89.    Andujar's regular weekly schedule, excluding on-call time,  major repair/renovation  projects, and emergencies, was as follows:

      (a) Weekdays: 7:00 a.m. to 4:30 p.m.

      (b) Saturdays and Sundays: recycling and cleaning, for two hours each day, typically in both the morning (for cleaning) and then in the afternoon (for recycling)

90.    Based on the foregoing, it is conservatively estimated that Andujar's regular weekly schedule entailed 51.5 hours of work. However, his wages only covered the first forty (40) hours he worked each week.

91.    To obscure and conceal their failure to pay Andujar the amount of minimum and overtime wages they were required to pay him, Defendants instructed Andujar to report only a portion of the hours he actually worked.

*NYLL Minimum Wage Shortfalls*

92.    Andujar's flat weekly wages fell below the applicable New York minimum wage rates.

93.    From October 5, 2017 to April 27, 2018, when Andujar was paid wages of $340.00 per week, Andujar's effective regular hourly rate of pay was $8.50 ($340 ÷ 40), which was below the New York minimum wage rates provided by New York's Minimum Wage Order for Miscellaneous Industries and Occupations (12 NYCRR § 142) (the "Miscellaneous Wage Order") during that period  (to wit: $11.00 in 2017; $13.00 in 2018; and $15.00  beginning in 2019).

94.    From April 28, 2018 through in or about August 2022, when Andujar was paid wages of $375.00 per week, Andujar's effective hourly rate of pay was $9.38 ($375 ÷ 40), which was below the Miscellaneous Wage Order's $15.00 hourly minimum wage rate during that period.

95.    Alternatively, if Andujar is adjudicated to have been a janitor as defined by New York's Building Service Wage Order, Andujar's weekly wages were below the applicable per-unit minimum wage rate to which he was entitled under 12 NYCRR § 141-1.2. Under a per-unit minimum wage analysis, Defendants were required to pay Andujar $430 per week (43 units x $10) from 2019 through 2022, which is $55.00 more per week than Andujar was actually paid.

*FLSA and NYLL Unpaid Overtime Wages*

96.    Although Andujar sporadically received additional funds from Defendants to perform major repair projects, typically involving major plumbing, painting apartments, and changing fixtures, he was not paid for any of the time he spent on-call.

97.    Nor was Andujar paid any wages for his routine weekend work (two hours per day on Saturdays and Sundays) or any other hours he spent performing his regular superintendent duties over and above the first forty hours he worked each week.

98.    In addition, Andujar was not paid for time he spent handling emergencies, such as leaks, during overnight hours and on weekends, even though this resulted in Andujar working more than his regular schedule of 51.5 hours per week.

99.    Defendants paid Andujar no wages for the 11.5 overtime hours Andujar worked each week as part of his regular weekly work schedule.

100.    Defendants required Andujar to be on call at or near 674 W. 161st St., 24 hours per day, seven days a week. Tenants would contact Andujar by his cellular telephone or by knocking on his door.

*Unlawful Deductions from Wages*

101.    In or about January 2022, Andujar's supervisor, Gartenberg, demanded that Andujar pay from his own funds, without reimbursement, a penalty assessed by the New York City Department of Sanitation in the amount of $100.00.

102.    Defendants had a years-long practice of requiring Plaintiff and similarly situated superintendents to pay penalties issued by New York City agencies.

103.    Defendants have continued to require superintendents to shoulder the costs of penalties issued by New York City agencies, even though Defendants were placed on notice of the illegality of this practice nearly a decade ago when Defendants faced similar allegations of similar, if not identical, wage and hour violations in the case Alejandro Armas, et al., against SKYC Management LLC, et al, 14 Civ.6360 (PGG)(HBP) (S.D.N.Y.).

86.    Defendants required Plaintiff and similarly-situated superintendents to pay for their own work tools, and pay for temporary replacement workers when they took vacations, all without reimbursement from Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION
### Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.*
### (Individually and on Behalf of the FLSA Collective)

87.     Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

88.     As described above, Plaintiff worked in excess of forty hours in a workweek.

89.     As described above, Defendants did not properly compensate Plaintiff for all hours he worked in excess of forty in a workweek, as required by the FLSA.

90.     Plaintiff is informed and believes, and thereon alleges, that Defendants have required, or require, the FLSA Collective Members, as part of their employment at the Greisman Buildings, to work without additional compensation, such as overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1).  That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate which is not less than one and one-half times the regular rate at which he is employed.

91.     In the performance of their duties for Defendants, members of the FLSA Class routinely worked more than forty (40) hours per week, yet did not receive premium overtime compensation for the work.  The precise number of unpaid overtime compensation will be proven at trial.

92.     Plaintiff proposes to undertake appropriate proceedings to have such FLSA Class Members aggrieved by Defendants' unlawful conduct notified of the pendency of this action and join this action as Plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written consents to joinder with the Court.

93.     Defendants' overtime violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

94.     Defendants have a policy and practice of refusing to pay overtime compensation to Plaintiff and other building workers.

95.     As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of those FLSA Collective Members similarly situated who file written consents to joinder in this action, for all unpaid overtime wages owed by Defendants to Plaintiff and the FLSA Collective, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

### AS AND FOR A SECOND CAUSE OF ACTION
### New York Labor Law – Minimum Wages
### (Individually and on Behalf of the NYLL Class)

96.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, with the same force and effect, as if fully alleged herein.

97.     Defendants knowingly and willfully paid Plaintiff and similarly-situated building maintenance workers less than the applicable minimum wage in violation of NYLL § 652 and the supporting regulations of the New York State Department of Labor.

98.     By the course of conduct set forth above, Defendants have violated N.Y. Lab. Law § 650, et seq., 12 N.Y.C.R.R. § 142-2.2 and/or 12 NYCRR § 141-1.2.

99.     As a consequence of the willful underpayment of minimum wages, alleged above, Plaintiff and members of the NYLL Class have incurred damages thereby and Defendants are indebted to them in the amount of unpaid minimum wages and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper, including but not limited to liquidated damages, interest and attorneys' fees.

### AS AND FOR A THIRD CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (Individually and on Behalf of the NYLL Class)

100.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, with the same force and effect, as if fully alleged herein.

101.    Defendants employed Plaintiff and similarly-situated building maintenance workers for workweeks longer than forty (40) hours and willfully failed to compensate them for their time worked in excess of forty (40) hours per week, at a rate of not less than one and one-half (1 and ½) times the regular hourly rate, in violation of the requirements of the NYLL.

102.    By the course of conduct set forth above, Defendants have violated N.Y. Lab. Law § 650, et seq. and 12 N.Y.C.R.R. § 142-2.2.

103.    Defendants have a policy and practice of refusing to pay overtime compensation at 1.5 times employees' regular rates of pay to building workers.

104.    As a consequence, Plaintiff and members of the NYLL Class have incurred damages thereby and the Defendants are indebted to them in the amount of unpaid overtime compensation and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper, including but not limited to liquidated damages, interest and attorneys' fees.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**Illegal Deductions, New York Labor Law, Article 19 § 193**
**12 N.Y.C.R.R. § 2.10(a)**
**(Individually and on Behalf of the NYLL Class)**

105.    Plaintiff incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

106.    In violation of the New York Labor Law, Article 19, § 193, Defendants unlawfully deducted wages from Plaintiff and the NYLL Class by requiring Plaintiff and other building workers to: (a) spend their own money on work-related expenses, including tools of the trade to complete mandated work; (b) pay fines and penalties issued against

20

Defendants; and/or (c) pay for replacement workers to fill in for them while they were on vacation.

107. The foregoing unlawful deductions further reduced Plaintiff's wages (and the wages of other building workers) below the amounts required by the NYLL and FLSA.

108. As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of NYLL Class Members, for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from defendants' unlawful and willful conduct as the Court deems just and proper.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**
**Violation of NYLL § 195(3)**
**(Individually and on Behalf of the NYLL Class)**

109. Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

110. The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

111. Defendants willfully failed to provide Plaintiff and NYLL Class Members with wage statements at the end of every pay period that correctly identified the number of overtime hours worked and other information as required by NYLL § 195(3).

112. Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

**RELIEF SOUGHT**

**WHEREFORE,** Plaintiff, Victor Andujar, on behalf of himself and on behalf of members of the FLSA Collective and NYLL Class against defendants, SKYC

Management LLC, 674 Holding LTD., Shimon Greisman, and Gary Gartenberg, respectfully requests that this Court:

1.      Designate this action as a collective action on behalf of the FLSA Class members and order the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 28 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the FLSA Collective Members;

2.      Designate Plaintiff as representative of the FLSA Collective;

3.      Designate Plaintiff's counsel as counsel for the FLSA Collective;

4.      Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the NYLL Class members with respect to all of the NYLL Claims;

5.      Appoint Plaintiff as representative of the NYLL Class;

6.      Appoint Plaintiff's counsel as Class Counsel for the NYLL Class;

7.      Toll the statutes of limitations;

8.      Declare, adjudge and decree that Defendants willfully violated the overtime wage provisions of the FLSA as to Plaintiff and the FLSA Collective;

9.      Declare, adjudge and decree that Defendants willfully violated their legal duties to pay overtime compensation as required under the NYLL as to Plaintiff and the NYLL Class;

10.     Declare, adjudge and decree that Defendants willfully violated their legal duties to pay accrued wages to Plaintiff and the NYLL Class;

11.     Declare, adjudge and decree that Defendants willfully violated their legal duties by requiring maintenance workers to pay for tools used solely for the benefit of

Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor;

12.     Award Plaintiff and all those similarly situated actual damages for unpaid wages and liquidated damages equal to the unpaid wages found due to Plaintiff and the proposed FLSA Collective as provided by the FLSA, 29 U.S.C. § 216(b);

13.     Award Plaintiff and all those similarly situated attorneys' fees, costs and disbursements as provided by the FLSA, 29 U.S.C. § 216(b);

14.     Award Plaintiff and the NYLL Class actual damages for unpaid wages, liquidated damages, statutory damages, penalties, attorneys' fees, costs, and interest, as provided under New York law;

15.     Award Plaintiff and the NYLL Class statutory damages for Defendants' failure to provide accurate wage statements pursuant to NYLL § 198(1-d);

16.     Award reasonable attorneys' fees and costs of the action; and

17.     Such other relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury on all issues so triable.

Dated:  New York, New York           Respectfully submitted,
        October 5, 2023

                                    RAPAPORT LAW FIRM, PLLC

               By:

                                    */s/ Marc A. Rapaport*
                                    Marc A. Rapaport
                                    80  Eighth Avenue, Suite 206
                                    New York, New York 10011
                                    Ph: (212) 382-1600
                                    mrapaport@rapaportlaw.com