Rapaport Law Firm, PLLC | Attorneys at Law | 80 Eighth Avenue | Suite 206 | New York, NY 10011 | Tel 212.382.1600 | Fax 212.382.0920 | www.rapaportlaw.com

**Rapaport Law Firm**

Marc A. Rapaport*
Tel (212) 382-1600
Fax (212) 382-0920
mrapaport@rapaportlaw.com

*Member NY & NJ Bars

July 10, 2025

**BY ECF**

Magistrate Judge Katharine H. Parker
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:      Andujar, *et al.* v. Skyc Management LLC. *et al.*
                Case No. 23-cv-08764 (MKV) (KHP)

Dear Judge Parker:

      This firm is counsel for named plaintiff Victor Andujar ("Andujar" or "Plaintiff") and opt-in plaintiffs Silvio Bernabel ("Bernabel"), Angel Lugo ("Lugo"), Juan D. Jimenez ("Jimenez") and Andres Perez ("Perez") ("Opt-in Plaintiffs") (Plaintiff and Opt-in Plaintiffs, collectively, "Plaintiffs"), in the above-referenced matter, which was commenced on October 5, 2023, and involves claims for wage and hour violations arising from Plaintiffs' employment as residential superintendents. We write jointly with counsel for Defendants, Skyc Management LLC ("Skyc"), 674 Holding LTD ("674 Holding"), Shimon Greisman ("Greisman"), and Gary Gartenberg ("Gartenberg") (collectively, "Defendants"), to request that the Court approve the settlement agreement (the "Agreement") reached by the parties herein as a fair and reasonable resolution of this matter. On April 23, 2025, in a settlement conference before Your Honor, the parties executed a binding Settlement Agreement Term Sheet ("Term Sheet"). Thereafter, the parties executed a more detailed settlement agreement, dated July 2, 2025 ("Settlement Agreement") that incorporates all provisions contained in the Term Sheet. Copies of the binding Term Sheet and the Settlement Agreement are attached hereto as Exhibits A and B, respectively.

      The Settlement Agreement provides that Defendants are jointly and severally liable for the cost of a lump sum, gross settlement amount totaling $1,050,000.00 (the "Settlement Amount"). The Settlement Agreement's apportionment of the Settlement Amount among each of the Plaintiffs and their counsel, Rapaport Law Firm, PLLC ("RLF"), is set forth and discussed in detail below.

Honorable Katharine H. Parker
United States Magistrate Judge
July 10, 2025

The Settlement Agreement reflects a desire by the parties to fully and finally settle Plaintiffs' Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims. As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

This case was commenced as a putative collective action under 29 U.S.C. § 216(b), and putative R. 23 class action as to NYLL claims. The Court conditionally certified an FLSA collective. Plaintiffs did not move for class certification under R. 23. The parties reached their Settlement Agreement before Plaintiffs' motion for final certification of the FLSA collective was decided.

Andujar filed his Complaint on October 5, 2023 (Cmpl., ECF No. 1) and a Corrected Complaint on March 4, 2024. *See* Corrected Cmpl., ECF No. 29. Defendants filed their Answer to the Corrected Complaint on March 6, 2024. *See* Answer, ECF No. 30. Bernabel, Lugo and Jimenez joined this case on December 7, 2023, December 23, 2023, and January 12, 2024, respectively. *See* Consent Forms, ECF Nos. 18, 19, and 23. On November 15, 2024, Judge Vyskocil granted Plaintiff's motion for conditional certification. *See* Cond. Cert. Order, ECF No. 61. On December 19, 2024, a Court-approved notice was sent to superintendents of Defendants' apartment buildings that informed them: "by joining this lawsuit, you designate Plaintiffs, or their counsel, to the fullest extent possible, to make decisions on your behalf concerning the case, the method and manner of conducting the case, and all other matters pertaining to this lawsuit. Decisions made and agreements entered into by Plaintiffs or their counsel relating to the lawsuit will be binding on you if you join the lawsuit." See Court-Authorized Notice, ECF No. 62-1. Upon receiving Court-ordered notice, opt-in plaintiff Perez joined this case on January 17, 2025. *See* Perez Consent Form, ECF No. 66.

On March 20, 2025, Plaintiffs moved for leave to file an amended complaint for the purpose of adding a gap-time claim under the NYLL, and for final certification of the FLSA collective. *See* Pls.' Motion, ECF No. 78 *et seq*. On February 19, 2025, Judge Vyskocil referred this case for a settlement conference before Your Honor. The in-person settlement conference, attended by all parties, was held on April 23, 2025. All of the Plaintiffs actively participated in settlement discussions through a Spanish-language interpreter. Each Plaintiff also signed the binding Term Sheet. *See* Binding Term Sheet, Ex. A.

The parties had the information and records that enabled them to reach an informed compromise. Discovery in this case was extensive. The parties exchanged several thousand pages of records, including time sheets and six years of payroll records for all Plaintiffs. Defendants deposed Plaintiffs Andujar, Bernabel, Lugo, and Jimenez. Plaintiffs deposed all of the Defendants. Pursuant to the parties' stipulation, Defendants also produced payroll records relating to other superintendents (ones who were selected by Plaintiffs' counsel) who had not joined the FLSA collective. Plaintiffs also obtained and produced video footage and photographs that supported their allegations regarding their work schedules and claims that they hired assistants who helped them with their jobs.

Honorable Katharine H. Parker
United States Magistrate Judge
July 10, 2025

Plaintiffs' counsel and staff prepared individualized, week-by-week damages spreadsheets for all Plaintiffs. In this process, Plaintiffs' counsel and staff: scrutinized payroll data from Defendants; relied on each plaintiff's personal recollections of their days and hours worked; and reviewed and considered extensive electronic evidence. Defendants responded by providing their own, alternative analysis explaining why Defendants believed that Plaintiffs' underlying assumptions and calculations were unrealistic. Each of the Plaintiffs was extensively involved in this process.

### A.  The Requirement of Court Approval Pursuant to *Cheeks.*

As Plaintiffs' claims arise, in part, under the FLSA, 29 U.S.C. §§ 201 *et seq.*, the Agreement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336, (S.D.N.Y. 2012) (citations and quotation marks omitted). As set forth below, the parties believe that the Settlement Agreement satisfies all of the foregoing factors.

### B.  Plaintiffs' Overtime Claims and Estimated Damages Calculations.[1]

Plaintiffs seek: (a) compensatory and liquidated (double) damages for unpaid overtime under the FLSA and NYLL, and unpaid minimum wages under the NYLL; (b) unpaid, agreed-upon hourly wages (*i.e.*, a gap-time claim under the NYLL); (c) damages for unreimbursed work-related expenses; (d) penalties for wage notice/wage statement violations; (e) interest; and (f) attorneys' fees.  As noted above, a settlement was reached before a decision was issued on Plaintiffs' motion to add NYLL gap-time claims.

As explained more fully below, because Plaintiffs were residential janitors, they face a significant risk that their NYLL overtime claims might fail because of the "janitor exemption" contained in New York's Minimum Wage Order for the Building Service Industry, 12 NYCRR 141-3.4 (the "Wage Order").  The applicable regulations provide that employees in the Building Service Industry, "except a janitor in a residential building, [must be paid] for overtime at a wage rate of 1 ½ times the employee's regular rate for hours worked in excess of 40 hours in a workweek."  *Id.*  Under this regulation, "[w]here there is only one employee, such employee shall be deemed a janitor."  *Id.*  Plaintiffs argue that they do not fall under the Wage Order's exemption because Defendants never paid them on the per-unit basis required by the Wage Order, and a substantial portion of the work they performed was not janitorial.  However,

---

[1] At the Court's request, Plaintiffs can provide the weekly damages charts that they utilized to calculate their potential damages during the parties' settlement negotiations, and upon which they based their apportionment of the net Settlement Amount.

Honorable Katharine H. Parker
United States Magistrate Judge
July 10, 2025

Plaintiffs acknowledge that the janitor exemption presents a risk to their NYLL overtime claims. *See*, *Gordon v Gen. Prop. Mgt. Assoc.*, 496 F Supp 3d 830, 841 (S.D.N.Y. 2020) (dismissing plaintiff's NYLL overtime claim based on janitor exemption where plaintiff was the only maintenance employee at the building). Notably, Plaintiffs were the designated janitors of their assigned building(s), where they resided on the premises. While the janitor exemption could not diminish Plaintiffs' overtime claims under the FLSA, their potential damages (largely due to the FLSA's shorter limitations period) would be far lower if they are found to be exempt janitors.

Plaintiffs contend that they had the status of employees for all work that they performed, including non-janitorial work for which they were compensated as independent contractors. Defendants take the opposite position, contending that Plaintiffs performed non-superintendent work as independent contractors. Defendants argue that Plaintiffs' status as independent contractors for non-superintendent work is supported by Defendants' issuance of IRS-1099 Misc. forms for amounts paid to Plaintiffs for apartment renovations, major repairs, and similar non-superintendent work. Therefore, Defendants contend that no overtime or minimum wages are owed for time spent performing non-superintendent work. Given Plaintiffs' and Defendants' starkly different positions regarding the janitor exemption and the independent contractor issues, there is a wide gap between their respective views of Plaintiffs' potential damages.

Plaintiffs' counsel prepared and provided two sets of estimated, weekly damages calculations for each plaintiff, as follows:

(a) "Mixed Rate" Damages Analysis:

Plaintiffs' Mixed-Rate damages analysis is based on Plaintiffs' position that Plaintiffs were acting as employees when they performed both superintendent and non-superintendent tasks, including (for example) apartment renovations, for which they were paid as independent contractors. Under this analysis, Plaintiffs include the amount time they spent on non-superintendent duties in calculating the number of hours for which they allege they are owed overtime pay. For example, Bernabel alleges that he worked an average of approximately 70 hours per week on combined superintendent and non-superintendent work. However, if Bernabel's overtime damages are limited to the time he spent performing janitorial duties (*i.e.*, excluding time spent on construction work), his claim would be limited to approximately 56 hours (16 overtime hours) per week. The Mixed Rate analysis also yields higher damages because it calculates Plaintiffs' effective, hourly overtime rates of pay based on all payments, and is not limited to superintendent wages. During weeks when Plaintiffs received significant 1099 payments, their effective overtime rates were particularly high.

Honorable Katharine H. Parker
United States Magistrate Judge
July 10, 2025

     (b) "Fixed Rate" Damages Analysis:

>Plaintiffs' Fixed Rate damages charts exclude the time that Plaintiffs spent on non-janitorial tasks; and the effective, premium overtime pay rates for each plaintiff are derived solely from their superintendent wages (excluding 1099 payments).

Plaintiffs have agreed to allocate and divide the net Settlement Amount based on the more straightforward and conservative Fixed Rate approach.

    **1. Andujar.**

Andujar worked for Defendants as the superintendent of 674 West 161st Street in Manhattan for approximately 18 years, until he retired in August, 2022. *See* Corrected Cmpl., ECF No. 29, ¶¶ 25, 88. Andujar estimates that he typically devoted 51.5 hours per week to superintendent duties, and spent 64.5 hours on combined superintendent and non-superintendent work. If Andujar receives the benefit of the NYLL six-year limitations period (*i.e.*, he is not deemed exempt under the janitor exemption), his claims span approximately 66 months, from February 2017 through his retirement in August 2022. If he is deemed an exempt janitor, his overtime claims would be limited to the FLSA's shorter limitations periods of two or three years, depending on whether Defendants' violations of the FLSA are found to have been willful. Andujar also faces the risk that Defendants may prevail on their argument that Andujar was an independent contractor when he performed non-superintendent work.

Excluding liquidated damages, if Andujar is not deemed exempt, he could potentially recover damages for unpaid overtime wages of: (a) $159,265.99 under the Mixed Rate analysis; and (b) $66,136.50 under the Fixed Rate analysis. Adding the statutory cap of $10,000 for wage notice and wage statement claims, damages for unreimbursed work-related expenditures, liquidated (double) damages, and statutory interest, Andujar could potentially recover a total of $486,878.62 (Mixed Rate) and $319,050.96 (Fixed Rate). Based on the Fixed-Rate analysis, Andujar is allocated $87,475.72 (12%) of the net Settlement Amount.

    **2. Bernabel.**

Bernabel worked for Defendants as the superintendent of 955 Walton Avenue in the Bronx from approximately 2001 until June 2024. Bernabel estimates that, on average, he devoted 56 hours per week to his superintendent duties, and 70 hours on his combined superintendent and non-superintendent work. If Bernabel receives the benefit of the NYLL's six-year limitations period, his claims span approximately 88 months. If he is deemed an exempt janitor, his claims would be limited to the FLSA's shorter limitations periods of two or three years, depending on whether Defendants are found to have willfully violated the FLSA.

Excluding liquidated damages, if Bernabel is not deemed exempt, his overtime and minimum wage claims have a combined, potential (best case) value of (a) $365,762 under the Mixed Rate approach; and (b) $146,326 under the more conservative Fixed Rate approach. Bernabel also asserts a claim for unreimbursed work-related costs in the amount of $64,050 (not including liquidated damages).

Honorable Katharine H. Parker
United States Magistrate Judge
July 10, 2025

In the most optimistic assessment (adding the statutory cap of $10,000 for his wage notice and wage statement claims, liquidated damages, and statutory interest), Bernabel could potentially recover damages totaling: (a) $898,836.93 under the Mixed Rate approach; and (b) $515,224.91 under the Fixed Rate approach. Based on the Fixed-Rate analysis, Bernabel is allocated $132,669.89 (19%) of the net Settlement Amount.

### 3. Lugo.

From 1999 to present, Lugo has been the superintendent of three buildings located on Gleason Avenue in the Bronx. Lugo estimates that he typically devoted 53 hours per week to his superintendent duties, and 67 hours per week performing combined superintendent and non-superintendent work. If Lugo receives the benefit of the NYLL's six-year limitations period, his claims span approximately 98 months. If Lugo is found to be an exempt janitor, his overtime claims would be limited to the FLSA's shorter limitations periods of two or three years.

Lugo's potential overtime and minimum wage claims have a potential value of approximately $597,100.46 (Mixed Rate) or $146,366.50 (Fixed Rate). Lugo also asserts a claim for unreimbursed work-related expenses of $201,300.00 based on his assertion that he paid extensive sums to laborers. Lugo has provided videos and other proof to support his allegation that he had long relied on a laborer (Miguel) to assist him with his duties. Collectively, all of Lugo's claims (overtime, minimum wage, unreimbursed work-related expenses, wage notices, liquidated damages, and interest) have an estimated, best-case value of $1,913,728.57 under the Mixed-Rate Analysis and $835,125.30 under the Fixed-Rate Analysis. Based on the Fixed Rate analysis, Lugo is allocated $210,145.60 (31%) of the net Settlement Amount.

### 4. Jimenez

From 2003 to present, Jimenez has been the superintendent of 1153 and 1155 Grand Concourse in the Bronx. He alleges that he typically devoted 47.5 hours per week to superintendent duties, and 60 hours on combined superintendent and non-superintendent work. If Jimenez receives the benefit of the NYLL's six-year limitations period, his claims span approximately 98 months, from February 2017 through April 2025. If he is deemed exempt under the NYLL, his overtime claims would be limited to the FLSA's shorter limitations periods of two or three years

Based on the Mixed-Rate Analysis, Jimenez' estimated, potential overtime and minimum wage damages total approximately $244,252.03, excluding liquidated damages. Under the Fixed Rate Analysis, his estimated, potential overtime and minimum wage damages total approximately $158,543.99, excluding liquidated damages. Jimenez also asserts a claim for unreimbursed work-related expenses of $97,846.20. Collectively, all of Jimenez' claims (overtime, minimum wage, unreimbursed work expenses, wage notice, liquidated damages and interest) have a potential (best case) value of $764,401.80 under the Mixed-Rate Analysis and $614,565.56 under the Fixed-Rate Analysis. Based on the Fixed Rate analysis, Jimenez is allocated $158,495.13 (23%) of the net Settlement Amount.

### 5. Perez

Perez has been the superintendent of 671 West 162nd St. in Manhattan since 1999. Perez alleges that he typically devoted 46.5 hours per week to his superintendent duties, and 58 hours to his combined superintendent and non-superintendent work. If he receives the benefit of the NYLL's six-year limitations period, his claims span approximately 98 months. If he is deemed exempt under the janitor exemption, his overtime claims would be limited to the FLSA's shorter limitations periods of two or three years, depending on whether Defendants are deemed to have willfully violated the FLSA.

Based on the Mixed-Rate Analysis, Perez' estimated, potential overtime and minimum wage damages total approximately $127,376.18. Under the Fixed-Rate Analysis, his estimated, potential overtime and minimum wage damages total approximately $121,537.63. Perez also asserts a claim for unreimbursed work-related expenses of $40,100. Collectively, all of Perez' claims (overtime, minimum wage, unreimbursed work expenses, wage notice, liquidated damages and interest) have a potential (best case) value of $404,266.95 under the Mixed-Rate analysis and $389,048.84 under the Fixed-Rate analysis. Based on the Fixed-Rate analysis, Perez is allocated $106,844.65 (15%) of the net Settlement Amount.

### C. Defendants' Position.

Defendants assert that Plaintiffs are not entitled to any overtime pursuant to the New York Labor Law as janitors in residential buildings are exempt from overtime. 12 N.Y.C.R.R. § 141-1.4. As Plaintiffs were the sole janitors in charge of the care and maintenance of their respective buildings, they would be exempt from overtime pursuant to the New York Labor Law. 12 N.Y.C.R.R. § 141-3.4. Accordingly, it is Defendants' position that Plaintiffs' overtime claims would, at best, go back two or three years (if willful) pursuant to the FLSA, which would significantly decrease any damages. Further, pursuant to the FLSA, Defendants would be able to take a credit for the reasonable value and fair cost for the lodging.

Defendants also dispute that Plaintiffs were not properly paid overtime wages. Defendants assert that to the extent there were any wage violations, such violations would not warrant liquidated damages because Defendants believed in good faith that they complied with the law.

With respect to wage notices and statements, Defendants contend as an affirmative defense that Plaintiffs are not entitled to such statutory damages since Plaintiffs were paid all compensation they were entitled to pursuant to law, and they cannot establish concrete injuries. Finally, Defendants dispute that Plaintiffs were subject to any unlawful wage deductions or that Plaintiffs were not properly reimbursed for work-related expenses. Defendants assert that all superintendents received written notices informing them that they were prohibited from hiring assistants/porters to help them perform their jobs.

### D. The Agreement is Fair and Reasonable.

Among other challenges and risks, the Court may find that Plaintiffs are exempt from overtime requirements under New York's janitor exemption. If Plaintiffs are found to be exempt janitors under the NYLL, their potential damages would be significantly reduced. For example, if the janitor exemption applies, Andujar would have no claim for minimum wages (which comprises $50,610 of his estimated damages), and because of the FLSA's shorter limitations periods, his overtime claim would be reduced from $66,136.50 to as little as $24,581.25. The potential recoveries of the other Plaintiffs' would be reduced by similar proportions. Plaintiffs also face uncertainty about whether they had the status of independent contractors, rather than employees, when they performed non-superintendent work. The five-factor "economic reality" test applied by courts to distinguish employees from independent contractors is fact-intensive, and the outcome of that analysis in this case is uncertain. *See Metevier v. Carr Props.*, 216 U.S. Dist. LEXIS 136623, at *24 - 25 (S.D.N.Y. Sept. 30, 2016) (holding that there were material issues of fact regarding whether superintendents were acting as employees or independent contractors when they performed construction work). Finally, Plaintiffs face the challenge of establishing the number of hours they worked each week for extended periods of time based largely on their recollections.

All of the foregoing risks strongly support the approval of the Settlement Agreement. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, at *6 (S.D.N.Y. Dec. 1, 2016) (citing litigation risks as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiffs could be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial. Here, Defendants claim that they reasonably relied on the NYLL's janitor exemption, and thus acted in subjective good faith.

Each Plaintiff is recovering approximately 27% of their respective maximum recoveries under the Fixed-Rate analysis. Courts regularly approve lesser settlement amounts. *See, e.g., Santiago v. Agadjani*, 2024 U.S. Dist. LEXIS 186484, at *10 (E.D.N.Y. Oct. 11, 2024) (collecting cases where courts have found recoveries of 13% and 15% to be reasonable). Plaintiffs' counsel has had extensive, in-person discussions with each of the Plaintiffs regarding the apportionment of the Settlement Amount. All Plaintiffs have agreed, in writing, to the apportionment of the Settlement Amount. *See*, Exh. A, Term Sheet; Exh. B, executed Settlement Agreement; and Exh. C, Plaintiffs' written acknowledgements.

### E. Plaintiffs' Counsel's Application for Attorneys' Fees.

Under both the FLSA and NYLL, Plaintiffs are entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief counsel obtained for the client. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012).

Honorable Katharine H. Parker
United States Magistrate Judge
July 10, 2025

Plaintiffs' counsel is seeking $354,369.02 in combined disbursements and legal fees ($7,074.99 for disbursements, and $347,294.03 in legal fees). This represents a contingent legal fee of approximately 33.3% of the net value of the settlement ($1,050,000 - $7,074.99 = $1,042,925.01 x 33.3%). This percentage is consistent with the contingency fee of 33.3% provided by counsel's retainer agreement with representative plaintiff Andujar, which is attached hereto as Exhibit D. The reimbursement for costs/disbursements is largely attributable to filing fees, service of process, and depositions. Invoices/receipts for expenses and costs are attached hereto as Exhibit E. These expenses were reasonable and necessary for the prosecution of Plaintiffs' claims.

Contingency fees of one-third are routinely approved in this Circuit. *See Sierra v. Mid City Gym and Tanning LLC*, 2017 U.S. Dist. LEXIS 176919, at *8 (S.D.N.Y. Oct. 25, 2017). The percentage method is the preferred method in this Circuit; however, the lodestar method is used as a check on the reasonableness of attorneys' fees. *See Guerrero v Jerome Meat & Produce Corp.*, 2025 U.S. Dist. LEXIS 8186, at *7 (S.D.N.Y. Jan. 15, 2025) (approving legal fees equaling one third of settlement).

RLF's time spent on this matter is set forth in the accurate, detailed and contemporaneous time records attached hereto as Exhibit F. The attached history bill shows a combined, total lodestar of $191,065.83. The requested fee ($347,294.03) represents a multiplier of 1.8. This is well within the range of what courts in this circuit have approved in similar cases. *See, e.g., Guerrero* at *8 (approving legal fee that represented a lodestar multiplier of approximately 2.88 where the requested legal fee was one-third of the settlement amount and was consistent with the retainer agreement); *Surdu v. Madison Global, LLC* No. 2018 U.S. Dist. LEXIS 48356, at *29 (S.D.N.Y. Mar. 23, 2018) (citations omitted) ("a multiplier of 2 is appropriate to compensate for the risk associated with contingent fees in FLSA cases"). Here, the one-third percentage is particularly reasonable because: (a) this case proceeded to full discovery (including six depositions and the exchange of thousands of pages of wage records); (b) there was extensive motion practice, including Plaintiffs' successful motion for conditional certification of the FLSA collective; and (c) there were significant risks arising from the janitor exemption and questions regarding whether Plaintiffs had the status of independent contractors for portions of their work.

The hourly rates set forth in the attached history bill are consistent with the rates that have been approved by courts in the Southern District in similar FLSA cases (including in cases handled by RLF). The lodestar reflects a billing rate of $500/hr for attorney Marc Rapaport; $115/hr for Karina Gulfo and Marcela Cabezas, experienced paralegals at RLF; and $95/hr for Joselin Orellana and Samantha Bourdierd, legal assistants at RLF. Courts have approved hourly rates of $500 and more for experienced wage and hour litigators in the Southern District of New York. *See Alvarez v. Fine Craftsman Grp., LLC*, 2024 U.S. Dist. LEXIS 143079, at *9 (S.D.N.Y. Aug. 6, 2024) (collecting cases and noting that "[c]ourts in this district have approved hourly rates for partners of $600 per hour in FLSA and NYLL suits").

The hours spent on the matter were reasonable and necessary in the prosecution of Plaintiffs' claims, and included a successful motion for preliminary collective certification (ECF No. 33 et seq.); extensive discovery (that included 6 depositions); and Plaintiffs' motion for final

Honorable Katharine H. Parker
United States Magistrate Judge
July 10, 2025

certification (ECF No. 78 et seq.). The attorneys and staff at RLF who were involved in this case, and whose time is reflected in the attached billing record, are:

1. **Marc Rapaport**

I am the managing member of Rapaport Law Firm, which began as my solo practice in 1995. I have more than thirty years of experience litigating employment matters, including matters touching upon nearly every aspect of wage and hour law, on behalf of employees in New York. I received a J.D. from Georgetown University Law Center in 1992. Thereafter, I worked as a Staff Attorney with the United States Department of Justice in Washington, D.C. I represent employees in a broad range of discrimination and wage/hour matters. I am an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York. I have endeavored to represent immigrant workers who often find it difficult to obtain skilled legal representation. For approximately the past fifteen years, my law practice has particularly focused on representing low-wage superintendents, porters, and other maintenance workers who are employed at apartment buildings in New York City. For example, in the widely-cited case, *Contrera v. Langer*, 290 F. Supp. 3d 269, 275 (S.D.N.Y. 2018), I was the lead attorney for an FLSA collective and class of several hundred residential building superintendents and porters. The *Contrera* case culminated in a settlement of $7,400,000. I also represented the plaintiffs in *Liz v 5 Tellers Assoc., L.P.*, 2021 U.S. Dist. LEXIS 63800 (E.D.N.Y. Apr. 1, 2021), which, like this case, involved an FLSA collective of superintendents and porters. When I am retained to represent defendants in wage and hour matters, my hourly rates are in excess of $600.00.

2. **Karina Gulfo**

Karina Gulfo has been a paralegal at Rapaport Law Firm since August 2018. Ms. Gulfo speaks fluent Spanish. Because of her language skills, Ms. Gulfo served a crucial and effective role in our firm's representation of Plaintiffs. Ms. Gulfo has performed FLSA damages calculations in multiple FLSA/NYLL cases since she joined Rapaport Law Firm. The estimated damages calculations in this case were particularly complex because of questions arising from Defendants' contention that Plaintiffs had the status of independent contractors when they performed non-superintendent work. In this matter, Ms. Gulfo also served as a primary point of contact for Plaintiffs. Ms. Gulfo has played the same, crucial role for our firm's Spanish-speaking clients in at least a dozen other FLSA matters, including collective and class action cases involving hundreds of workers. Prior to joining our firm, Ms. Gulfo worked as a paralegal for a law firm in Bronx County, providing support in both criminal and civil rights matters. The hourly rate for Ms. Gulfo ($115.00) is amply justified by her experience.

3. **Marcela Cabezas**

Ms. Cabezas has been a paralegal at Rapaport Law Firm since 1998. Ms. Cabezas graduated from New York Institute of Technology with a B.S., and she also has a certificate from the New York Paralegal School. Ms. Cabezas speaks fluent Spanish. Because of her language skills and extensive experience providing paralegal support in wage and employment

Honorable Katharine H. Parker
United States Magistrate Judge
July 10, 2025

cases, Ms. Cabezas plays a crucial and effective role in our firm's representation of immigrant workers. For nearly two decades, she has served as a point of contact for our firm's Spanish-speaking clients. The hourly rate for Ms. Cabezas ($115.00) is amply justified by her experience.

### 4. Joselin Orellana

Ms. Orellana has been a legal assistant with Rapaport Law Firm since March 2020. Ms. Orellana speaks fluent Spanish. She is particularly experienced in performing damage calculations in FLSA/NYLL cases. In this case, Ms. Orellana played an important role in calculating damages and preparing Plaintiffs' damages chart.

### 5. Samantha Bourdierd

Samantha Bourdierd has been a legal assistant at Rapaport Law Firm since February 2024. Ms. Bourdierd is fluent in Spanish, which has made her a valuable resource for Spanish-speaking clients. This was particularly important in this case, where she assisted with communications with Plaintiffs. Ms. Bourdierd communicated in Spanish with Plaintiffs during the discovery process.

\* \* \*

We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. Should Your Honor have concerns regarding this settlement, the parties are happy to discuss them. The parties thank the Court for its attention to this matter.

Respectfully yours,

*/s/ Marc A. Rapaport*

Marc A. Rapaport

Encs. (Exhibits A – F)

cc:     (*Via ECF only*)